GARY RESTAINO
United States Attorney
District of Arizona

GLENN B. McCORMICK
Arizona State Bar No. 013328
Assistant U.S. Attorney
Two Renaissance Square
40 N. Central Ave., Suite 1200
Phoenix, Arizona  85004
Telephone:  602-514-7500
Email: glenn.mccormick@usdoj.gov
Attorneys for Plaintiff

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America,<br><br>            Plaintiff,<br><br>       v.<br><br> Eric Thomas Scionti,<br><br>            Defendant. | CR-23-00600-PHX-JJT(JZB)<br>CR-24-00890-PHX-JJT (JZB)<br><br>**UNITED STATES' SENTENCING MEMORANDUM** |

Intertwining Plea Agreements:

     a.     On October 3, 2024, Eric Thomas Scionti ("defendant") entered a guilty plea in CR-23-00600-PHX-JJT to Count One of the indictment charging the defendant with a violation of Title 18, United States Code (U.S.C.) §§ 922(g)(1) and 944(a)(8), Possession of a Firearm and Ammunition by a Prohibited Person, and in CR-24-00890-PHX-JJT Count One of the indictment charging the defendant with a violation of Title 18, United States Code (U.S.C.) § 48(a)(1) Animal Crushing. The plea agreements in each case contain intertwining stipulations.

     b.     Each case contains the following stipulations:

          1.     Stipulation.  Pursuant to Fed. R. Crim. P. 11(c)(1)(C), the parties stipulate that defendant's sentence in each case shall not exceed the middle of the sentencing range as calculated under U.S.S.G. § 1B1.1(a).  The stipulated sentencing caps will not change based on departures considered under U.S.S.G. § 1B1.1(b).  Nothing in

this agreement shall preclude defendant from moving for a downward departure, variance, or sentence below the caps, or the court from imposing a sentence below the caps.

2. Stipulation. Pursuant to Fed. R. Crim. P. 11(c)(1)(C), the parties stipulate that both plea agreements are contingent upon the defendant pleading guilty to Count 1 in each case and the court accepting the defendant's guilty pleas in each case. The parties further stipulate and agree that if the defendant does not enter the plea agreement in each case, the United States may, but is not required to, withdraw from a plea agreement the defendant has entered, in which case the parties would not be bound by the terms of the plea agreements, including the stipulations, recommendations, or other agreements therein. In the event defendant withdraws his guilty plea in either case or the Court rejects the defendant's guilty plea in either case, the United States may, but is not required to, withdraw from the remaining plea agreement with the defendant. Only the United States, not the defendant, may elect to withdraw from the plea agreements.

3. Stipulation. Pursuant to Fed. R. Crim. P. 11(c)(1)(C), the parties stipulate that the sentences in the cases shall be served concurrently.

c. Additionally, CR-23-00600-PHX-JJT contains the case specific stipulation that:

1. Pursuant to Fed. R. Crim. P. 11(c)(1)(C), the parties stipulate and agree that on January 18, 2023, during the execution of a search warrant at the Tempe residence where the defendant resided, a Winchester 1894 .30-.30 rifle with serial number 831271 was seized by FBI agents along with five other firearms and 1,826 rounds of ammunition. That Winchester firearm is listed in the Forfeiture Allegation of the Indictment as item number six. That firearm was later determined to be stolen. The United States and the defendant further stipulate and agree that the defendant has no legal, possessory, or equitable interest in the stolen Winchester firearm and that the FBI may return it to the owner from whom it was reported stolen. The parties further stipulate that the Winchester 1894 .30-.30 rifle with serial number 831271 shall not be included in any

Judgment of forfeiture issued by the court in this case.

Sentence Requested by the United States:

The United States requests the court to accept the defendant's guilty pleas and the plea agreements in both cases. The United States requests the Court to follow the Plea Agreement stipulations in each case pursuant to Fed. R. Crim. P. 11(c)(1)(C) and impose stipulated concurrent sentences that do not exceed the middle of the sentencing range as calculated under United States Sentencing Guidelines (U.S.S.G.) § 1B1.1(a) as to each case.

**Sentencing Factors:**

"The Court shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in [the seven factors below]." Title 18 U.S.C. § 3553(a).

**Title 18 U.S.C. § 3553(a) analysis:**

**1. Nature and Circumstances of the Offense and History and Characteristics of the Defendant**

    a. Nature and Circumstances of the Offenses

        i. Possession of a Firearm and Ammunition by a Prohibited Person

The evidence in this case establishes that while in absconder status from supervision related to Arizona Superior Court felony convictions, the defendant acquired and possessed firearms and ammunition. The defendant sold at least one firearm he had acquired and possessed completed applications to fraudulently obtain Bureau of Alcohol, Tobacco, Firearms, and Explosives "Curios and Relics" licenses. Emails recovered during the investigation suggest the defendant was attempting to engage in the business of acquiring and selling firearms using the internet. Therefore, the evidence establishes that the defendant did not merely possess a firearm, he was actively engaged in acquiring and even selling firearms while prohibited by law from doing so.

        ii. Animal Crushing

The evidence acquired in this case establishes a pattern of cruel behavior toward

pigeons. The defendant engaged in the additional behavior of creating digital video and audio recordings of the cruelty he inflicted upon the pigeons. While there is a fetish market for such recordings, the investigation did not recover evidence supporting a belief that the defendant was marketing the recordings. This leads to the conclusion that the defendant may not have made the recordings for pecuniary gain. Instead, he appears to have made the recordings so he could enjoy reliving his acts of cruelty at his leisure.  Pigeons are not the most revered creature in the animal kingdom, but it is not the choice of creature that shocks the conscience in this case, it is that the defendant enjoyed engaging in gruesome cruelty toward living creatures.

The nature and circumstances of the offenses support a sentence to the Bureau of Prisons consistent with the stipulations in the plea agreements.

b.  History and Characteristics of the Defendant

The PSR recounts the defendant's social, mental health, and substance abuse history. The United States will not repeat that information here but does include it by reference. It is not uncommon for traumatic experiences in youth, like those experienced by the defendant, to be part of the history of defendants with mental health, substance abuse, and criminal histories like the defendant's. Even if caused by circumstances out of the defendant's control, and whether predictable or not, they reflect poorly upon the likelihood that the defendant can remain law abiding.

The defendant's criminal history reflects a man who has poor judgment, repeatedly makes bad choices, has uncontrolled addiction issues, and does not learn from the consequences of his criminal acts. Pointedly, after several chances at probation, the defendant was eventually sentenced to the Arizona Department of Corrections and was in custody from September 8, 2014, to March 4, 2019 (approximately 54 months). After his release from incarceration, by December of 2021 a petition was filed alleging multiple release violations. It does not appear that incarceration, or at least the severity of incarceration imposed upon the defendant to date, has served to deter further criminal

conduct. Indeed, the defendant absconded from post-incarceration supervision and continued to engage in criminal conduct, undeterred by prior consequences.

Although the defendant's conviction history does not reveal patterns of violent criminal behavior toward humans, he was arrested twice in 2022 for physically assaulting his girlfriend and has made violent threats.  During the investigation, agents spoke to the mother of the defendant's girlfriend.  She provided three voicemail messages apparently left for her daughter. In one of the voicemail messages the defendant's extremely agitated voice can be heard saying:

> "[unintelligible] bitch, I going to f****** kill you! I'm going to cut your f****** throat and you're going to f****** choke on your own f****** blood and you're going to scream and its going to be f****** music! I'm going to f****** kill you!"

The defendant's history of a threat to commit acts of gruesome violence to another human being—while enjoying it—and taking pleasure in inflicting pain and suffering on animals support a sentence to the Bureau of Prisons as stipulated in the plea agreements to protect the public and a person from the defendant.

**2.  The Need for Sentence Imposed to:**

A.  Reflect Seriousness of the Offense

Title 18 United States Code, Section 922(g) subsections identify circumstances associated with persons that reflect potential danger to the community if those persons are in possession of firearms.[1] As a multi-convicted felon, the defendant is someone who disregards the law.  As such, he cannot be trusted to possess firearms. As an armed felon who is prone to disregarding the law and who has committed concerning acts of violence upon animals, serious consequences are necessary to  protect the public.

Title 18 United States Code, Section 48(a)(1) was passed to address cruel treatment

---

[1] 18 U.S.C. § 922(g)(1) felons, (2) fugitives, (3) addicts, (4) mental defectives, (5) aliens illegally in the US, (6) dishonorable military discharge, (7) renounced citizenship, (8) subject to certain public safety court orders, and (9) misdemeanor domestic violence conviction.

of animals. Before being amended in 2019 to criminalize acts such as the defendant's, the statute was originally passed to more broadly address fetish animal cruelty videos that are marketed to the specific fetish community, typically online.[2] The statute as a whole was

---

[2] Pub.L. 111-294 § 2. Dec. 9, 2010, 124 Stat. 3177,

"The Congress finds the following:

(1) The United States has a long history of prohibiting the interstate sale, marketing, advertising, exchange, and distribution of obscene material and speech that is integral to criminal conduct.

(2) The Federal Government and the States have a compelling interest in preventing intentional acts of extreme animal cruelty.

(3) Each of the several States and the District of Columbia criminalize intentional acts of extreme animal cruelty, such as the intentional crushing, burning, drowning, suffocating, or impaling of animals for no socially redeeming purpose.

(4) There are certain extreme acts of animal cruelty that appeal to a specific sexual fetish. These acts of extreme animal cruelty are videotaped, and the resulting video tapes are commonly referred to as "animal crush videos".

(5) The Supreme Court of the United States has long held that obscenity is an exception to speech protected under the First Amendment to the Constitution of the United States.

(6) In the judgment of Congress, many animal crush videos are obscene in the sense that the depictions, taken as a whole--

(A) appeal to the prurient interest in sex;

(B) are patently offensive; and

(C) lack serious literary, artistic, political, or scientific value.

(7) Serious criminal acts of extreme animal cruelty are integral to the creation, sale, distribution, advertising, marketing, and exchange of animal crush videos.

(8) The creation, sale, distribution, advertising, marketing, and exchange of animal crush videos is intrinsically related and integral to creating an incentive for, directly causing, and perpetuating demand for the serious acts of extreme animal cruelty the videos depict. The primary reason for those criminal *3178 acts is the creation, sale, distribution, advertising, marketing, and exchange of the animal crush video image.

(9) The serious acts of extreme animal cruelty necessary to make animal crush videos are committed in a clandestine manner that--

(A) allows the perpetrators of such crimes to remain anonymous;

(B) makes it extraordinarily difficult to establish the jurisdiction within which the

passed to address both obscene media and cruel acts against animals in or affecting interstate or foreign commerce. Although less serious than 922(g)(1)[3], the defendant's 48(a)(1) crime reflects a callous disregard for life and pleasure in causing pain to animals. These characteristics are impossible to reconcile with social norms. Such a lack of empathy may transcend to humans as well. At a minimum, a conviction for Animal Crushing reflects a disregard for the law and is potentially a signal that the defendant is extremely dangerous to the public. Therefore, the actual seriousness is relative to the actual deviant character of the defendant, the extent of which is unknown in the present case. Caution is prudent and a sentence consistent with the stipulations in the plea agreements is warranted.

### B. Afford Adequate Deterrence to Criminal Conduct

Adequate deterrence is difficult to quantify. The defendant previously served a 54-month sentence that did not deter him at all. So far, incarceration has only served the incapacitation element of correction efforts, and certainly not deterrence. While a lengthy sentence of incarceration is warranted, education and treatment coupled with incarceration may better serve to deter future criminal conduct by the defendant. By some means the defendant needs to gain insight into the cause of his unlawful and deviant behavior and the means to control those impulses. Incarceration alone has proven inadequate to achieve that result so far in the defendant's life. Therefore, relevant treatment while incarcerated and upon subsequent Supervised Release supervision is essential to rehabilitating and deterring the defendant.

### C. Protect the Public from Further Crimes of the Defendant

---

underlying criminal acts of extreme animal cruelty occurred; and

(C) often precludes proof that the criminal acts occurred within the statute of limitations.

(10) Each of the difficulties described in paragraph (9) seriously frustrates and impedes the ability of State authorities to enforce the criminal statutes prohibiting such behavior."

[3] Title 18 U.S.C. § 922(g)(1) is a Class C felony with a maximum sentence of 15 years and Title 18, U.S.C. § 48(a)(1) is a Class D felony with a maximum sentence of 7 years.

As indicated in Section 2B directly above, incarceration and treatment are necessary to protect the public long term. A lengthy sentence will protect the public through the temporary separation and incapacitation of the defendant from society. The defendant's lengthy criminal history stretches back to at least 2002, with adult convictions beginning in 2007. The defendant's criminal involvement has been continual, without a break of any significant length. Therefore, a lengthy sentence in the Bureau of Prisons is warranted to protect the public.

### D. Provide the Defendant with Needed –

#### Educational or Vocational training

The defendant has shown interest in higher education that will make him more marketable and productive as a member of society. That interest should be encouraged and required to motivate the defendant to be successful. Further, filling his time with mandated educational responsibilities will leave him less idle time to engage his criminal propensities. While incarcerated and on Supervised release, the defendant should be required to participate in educational development to help him matriculate back into society as a person with skills that will make him more employable.

#### Medical Care

The defendant's history establishes a great need for treatment. It is clear that he has both substance abuse and mental health problems that have not been adequately addressed. Although the defendant claims in the Draft Presentence Investigation Report (D/PSR) that "he has never participated in substance abuse treatment", D/PSR p. 30, pp 106, subsequent paragraphs of the D/PSR chronical several treatment and counseling experiences. The defendant does report both mental health problems and prior treatment efforts. Whatever may have been done to address his likely related substance abuse and mental health problems, success has so-far eluded the defendant. Elements of the defendant's sentence should require assessment and, assuming a medical professional recommends it, intensive treatment and counseling. The defendant's history and common knowledge establish that

1  treatment will be necessary for the defendant to successfully matriculate back into society
2  and live a crime-free successful life.

### Other Correctional Treatment

Programming that teaches practical life skills beyond substance abuse and mental health efforts may help the defendant navigate life with less stress and uncertainty. To the extent that such programs are available, the defendant should be actively encouraged and incentivized to successfully complete such programming to help his achieve a more productive and law-abiding life.

### 3.  Kinds of Sentence Available

A violation of Title 18, U.S.C. § 922(g)(1), Possession of a Firearm by a Prohibited Person is punishable by a maximum fine of $250,000.00, a maximum term of imprisonment of fifteen years, or both, and a term of supervised release of three years.  A violation of  Title 18, U.S.C. § 48(a)(1), Animal Crushing is punishable by a maximum fine of $250,000.00, a maximum term of imprisonment of seven years, or both, and a term of supervised release of three years. The defendant is not probation eligible. A sentence to the Bureau of Prisons with three-years of Supervised Release to follow is warranted under all of the circumstances.

### 4.  Kinds of Sentence and Sentencing Range

The convictions, applicable U.S.S.G. range in the D/PSR of Total Offense Level 17 and Criminal History Category IV and resulting range of 37 to 46 months, along with the Plea Agreement Stipulations create a sentencing cap of approximately 41 months and an available term of Supervised Release of three years.

However, the D/PSR comments that an upward departure pursuant to USSG 4A1.3(a)(1) for two of six misdemeanor convictions that have been "set aside" may be applicable and warrant an upward departure. D/PSR, p. 34, pp. 134. Because each of the convictions would have received a criminal history point the D/PSR comments that but-for being set aside, the defendant would have had ten criminal history points and be in Criminal

History Category of V. Therefore, the D/PSR recommends an upward departure for inadequacy of criminal history to Criminal History Category V and Total Offense Level 17. The departure will result in a USSG range of 46-57 months.  That adjustment would result in a sentencing cap of approximately 51 months pursuant to the sentencing stipulations in the plea agreements. Application of USSG § 4A1.3(a)(1) does not require the court to reject the plea agreements.

> Convictions that have been "set aside" are to be counted.
>
> A number of jurisdictions have various procedures pursuant to which previous convictions may be set aside or the defendant may be pardoned for reasons unrelated to innocence or errors of law, e.g., in order to restore civil rights or to remove the stigma associated with a criminal conviction. Sentences resulting from such convictions are to be counted. However, expunged convictions are not counted.

USSG § 4A1.2, Note 10.   USSG 4A1.2(a)(1) has been applied this way in the Ninth circuit. *Unites States v. Hayden*, 255 F.3d 768 (9th Cir. 2001). Hayden moved courts to set aside a couple of his prior convictions, which they did, then petitioned to have his sentence recalculated with what he thought would be a new criminal history score. The court analyzed the reason why the convictions were set aside and determined it was not due to innocence or errors of law like in a true expungement. Hayden's petition was denied.

The defendant unsuccessfully applied several times to  have his rights restored. It appears that having misdemeanor convictions set aside was also part of his campaign. Because the defendant's misdemeanor convictions were set aside and not expunged, two criminal history points should be counted.

### 5. Pertinent Policy Statements

Although the D/PSR identifies possibly applicable departures pursuant to USSG §§ 5K2.0, 2.2, and 2.8 (Policy Statements), stipulations in the plea agreements state: "[t]his stipulated sentencing cap will not change based on departures considered under U.S.S.G. § 1B1.1(b). USSG § 1B1.1(b) states: [t]he court shall then consider Parts H and K of

Chapter 5…" Therefore, application of the Part K departures identified in the D/PSR would require the court to reject the plea agreement. The United States further states that the USSG § 5H1.3 Mental and Emotional Conditions (Policy Statement) departure is similarly precluded from being applied pursuant to the plea agreement stipulations. The United States requests the court to accept the plea agreements and not depart pursuant to USSG parts H and K.

**6. Need to Avoid Sentencing Disparities**

The United States is not aware of any similar cases that have been sentenced differently.

**7. Need to Provide Restitution**

Neither of the charged cases involve human victims. Restitution will not be part of the sentencing in either case.

**Conclusion and Sentencing Recommendation:**

The plea agreement stipulates that the sentences in each case shall not exceed the middle of the U.S.S.G. range, shall be imposed to run concurrently, and that a three-year term of Supervised Release shall be imposed. The defendant's criminal acts support a sentence consistent with the stipulations.

The defendant did not merely have a single firearm for personal protection, he acquired many firearms and was engaged in commerce with them. Further, he did not merely have them to engage in commerce, otherwise he would not have needed over 1,800 rounds of ammunition. He was well aware that possessing firearms was a violation of the law and was actively trying to get his Constitutional rights restored so he could legally possess firearms. The defendant's lengthy criminal history reveals his longstanding refusal to conform to the law, poor judgment, and refusal to submit to court authority. In addition to being a felon, his mental health issues and drug addiction make him especially untrustworthy with lethal weapons. The defendant has been accused of assaulting his girlfriend and has been convicted for torturing animals. The defendant presents a danger

to the community that supports imposition of a sentence consistent with the stipulations in the plea agreements.

Therefore, the United States requests the court to find the defendant subject to Criminal History Category V and Total Offense Level 17, and to sentence the defendant to the Bureau of Prisons for 51 months, to be followed by three years of Supervised Release. Further, the United States recommends that the defendant be assessed for mental health and substance abuse issues by appropriate professionals and compelled to engage counseling and treatment if deemed necessary.

Respectfully submitted this 10th day of February, 2025.

GARY RESTAINO
United States Attorney
District of Arizona

*s/ Glenn B. McCormick*
GLENN B. McCORMICK
Assistant U.S. Attorney

**CERTIFICATE OF SERVICE**

I hereby certify that on **February 10, 2025**, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrant:

Myles Schneider
Counsel for Eric Thomas Scionti

 *s/Glenn B. McCormick*
U.S. Attorney's Office